1
2
3
4                           UNITED STATES DISTRICT COURT
5                         NORTHERN DISTRICT OF CALIFORNIA
6
7    AMEER ALGHUSAIN,                          Case No.  24-cv-01863-JSC
8                    Plaintiff,
                                               **ORDER RE: MOTIONS TO DISMISS**
9           v.
                                               Re: Dkt. Nos. 77, 78, 79, 80
10   PETER WEBB, et al.,
11                  Defendants.

12          Ameer Alghusain filed suit alleging violations of "state and federal laws concerning

13   retaliation, unpaid wages, defamation, interference with prospective economic relations and

14   misappropriation of trade secrets."  (Dkt. No. 74 ¶ 1.)  Now pending before the Court are motions

15   to dismiss filed by Balfour Beatty Infrastructure, Inc. ("Balfour"), (Dkt. No. 78), and Scott

16   Richards, Wayne Richardson, and U.S. Rail Systems, Inc., (Dkt. No. 79).  Having carefully

17   considered the parties' submissions, the Court concludes oral argument is not required, *see* N.D.

18   Cal. Civ. L.R. 7-1(b), and GRANTS in part and DENIES in part the motions to dismiss.  Plaintiff

19   plausibly alleges an employment relationship for purposes of the state law retaliation, overtime,

20   meal break, rest period, and wage statement claims.  But Plaintiff fails to allege sufficient facts to

21   support his defamation, interference with prospective economic relations, and trade secret claims.

22   As to the federal retaliation claims, those are dismissed as to Mr. Richards and Mr. Richardson

23   because Plaintiff's administrative complaint failed to provide them fair notice of the present suit.

24                                        **BACKGROUND**

25   **I.       COMPLAINT ALLEGATIONS**

26          Plaintiff "is a Railroad & Trains Engineer."  (Dkt. No. 74 ¶ 13.)[1]  In June 2023, United

27   _____

28   [1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the
     ECF-generated page numbers at the top of the documents.

United States District Court
Northern District of California

United States District Court
Northern District of California

Construction Management, Inc. ("United") approached him "on behalf of Defendant Balfour to solicit his high-level electrical engineering skills and services." (*Id.* ¶ 15.) United offered him "a 'contractor' position as Senior Electrical Trains & Electrification Engineer to work for Balfour in the last stage of CALTRAIN electrification project." (*Id.* ¶ 16.) "From July 3, 2023, and until August 3, 2023, Mr. Alghusain was an employee (or in the alternative a contractor) for United and Balfour in a joint employer relationship." (*Id.* ¶ 18.) "Defendants required him to work 50 hours per week, every day in the offices of Defendant Balfour, under direct supervision of Scott Richards, Wayne Richardson and Michael Vaz, who in turn reported to Peter Webb." (*Id.* ¶ 42.)

Part of Plaintiff's role was "complet[ing] the safety, operations, maintenance and training documents and hand[ing] the documents to CALTRAIN on behalf of Balfour for proper and safe implementation to operate the new electric trains by 2023." (*Id.* ¶ 39.) Plaintiff "discovered that these important and safety-sensitive documents created by Balfour were unprofessional in copy/paste formats from the internet." (*Id.* ¶ 51.) Plaintiff "clearly stated to the management team including Michael Vaz and Matt Brassington from Balfour and Wayne Richardson from United . . . that the quality and quantity of these documents [were] not compliant with the railroad safety standards." (*Id.* ¶ 54.) Plaintiff also expressed these concerns to Mr. Richards, President of United. (*Id.* ¶ 65.) In response, Plaintiff was told by Mr. Richardson and Mr. Richards to "just sign the documents and stop sending e-mails." (*Id.* ¶¶ 58; *id.* ¶ 63 ("just ignore them and sign the documents"); *id.* ¶ 65 ("just listen to Wayne and sign on these documents"); *id.* ¶ 76 ("I do not care if the documents are wrong or unsafe, just sign the documents and send over to CALTRAIN, we need to close this project and leave asap."); *id.* ¶ 81 ("finish the documents and sign on the reports even if they are wrong or unsafe").) Plaintiff "submitted a total of 20 documents which he considered safe and adequate, but he refused to sign on the other 100+ pending documents because they [were] wrong, unsafe and required re-testing and re-construction." (*Id.* ¶ 79.) Plaintiff also went to power stations "to validate what [was] on engineering/ safety papers . . . match[ed] the actual products/installation in the field" and was told "to stop looking at the field and only finish and sign the submittals papers at the office blindly." (*Id.* ¶¶ 86, 87.)

2

On August 3, 2023, Mr. Richardson called Plaintiff on the phone. "Mr. Webb got on the call and said with loud and angry voice to Mr. Alghusain: *'Do not bother coming to the office tomorrow, F*** off, you are fired'*." (*Id.* ¶ 93.) After Plaintiff's termination, Mr. Richards and Mr. Richardson used documents, manuals, and presentations Plaintiff developed "without any regards to [Plaintiff's] brand name and trademark US Rail™ that is solely owned by Ameer Alghusain in the electric trains and electrification markets since 2002." (*Id.* ¶ 102.)

## II.     PROCEDURAL HISTORY

In August 2023, "Plaintiff filed a *pro se* complaint with United States Department of Labor . . . under the Federal Railroad Safety Act and the National Transit Systems Security Act." (*Id.* ¶ 12.) He received a right to sue letter in April 2024. (*Id.*)

In March 2024, he filed suit without attorney representation. (Dkt. No. 1.) Upon retaining counsel, he filed an amended complaint in June 2024 asserting 15 causes of action. (Dkt. No. 7.) United moved to dismiss the breach of contract, unjust enrichment, and fraud claims and to strike the punitive and emotional distress damages requests. (Dkt. No. 22.) Balfour joined United's motion. (Dkt. No. 29.) In September 2024, the Court denied United's motion to dismiss as moot because Plaintiff settled his claims against United. (Dkt. No. 44.) The Court granted Balfour's motion to dismiss with leave to amend and denied its motion to strike.[2] (*Id.*)

On April 18, 2025, Plaintiff filed the Amended Complaint at issue alleging 12 causes of action. The First and Second Causes of Action allege Balfour and Individual Defendants[3] violated the Federal Railroad Safety Act ("FRSA") and National Transit Systems Security Act ("NTSSA") by "terminat[ing] [Plaintiff's] contract and employment because he reported to Balfour, United and CALTRAIN and the federal authorities that the safety, operations, maintenance and training documents required by CALTRAIN [were] unsafe, incomplete and inadequate and they [would] endanger Americans if used as a basis to operate or maintain the CALTRAIN commuter rail line."

---

[2] Mr. Richards was served on August 28, 2024. (Dkt. No. 41.) Mr. Richardson waived service on September 6, 2024. (Dkt. No. 42.) So, their responsive pleadings were not yet due.
[3] The Individual Defendants are Peter Webb, Wayne Richardson, and Scott Richards. (Dkt. No. 74 ¶ 7 n.1.) Per the parties' joint case management statement, "Defendant Peter Webb was dismissed at the Case Management Conference held on December 12, 2024." (Dkt. No. 52 at 2.)

United States District Court
Northern District of California

1    (*Id.* ¶¶ 74, 121.)  The Third Cause of Action alleges Balfour and Individual Defendants violated

2    California Labor Code § 1102.5 by "discharge[ing] him in retaliation for his disclosure of

3    improper safety practices and documentation."  (*Id.* ¶ 129.)  Causes of Action Four through Seven

4    allege Balfour and Individual Defendants violated the California Labor Code by intentionally

5    misclassifying Plaintiff as an independent contractor and thus failing to provide overtime

6    compensation, meal breaks, rest periods, and wage statements.  (*Id.* ¶¶ 135-51.)  Cause of Action

7    Eight, against Balfour, alleges a UCL violation premised on these employment claims.  (*Id.* ¶

8    160.)  Cause of Action Nine alleges Balfour and Individual Defendants defamed Plaintiff through

9    false statements made to CALTRAIN, union representatives, and other subcontractors.  (*Id.* ¶¶

10   164-66.)  The Tenth Cause of Action against all Defendants alleges interference with prospective

11   economic relations on the ground Plaintiff did not get a three-year contract because of the

12   defamatory statements.  (*Id.* ¶¶ 172-73.)  Finally, Causes of Action Eleven and Twelve against

13   Individual Defendants, Richards and Richardson, and U.S. Rail Systems allege misappropriation

14   of trade secrets in violation of federal and state law.  (*Id.* ¶¶ 176-90.)

15        U.S. Rail Systems, Mr. Richards, and Mr. Richardson filed a motion to dismiss Causes of

16   Action One, Two, Nine, Ten, Eleven, and Twelve, which Balfour joined as to the Tenth Cause of

17   Action.[4]  (Dkt. Nos. 76, 77, 79.)  And Balfour filed a motion to dismiss Causes of Action Three

18   through Nine, which Mr. Richards and Mr. Richardson joined as to Causes of Action Three, Four,

19   Six, Seven, and Eight.[5]  (Dkt. No. 78, 80.)  In addition, or in the alternative, Balfour moves "under

20   Federal Rule of Civil Procedure 12(e) for a more 'Definite Statement' of claims alleged in the

21   Fourth, Fifth, Sixth, Seventh, Eighth and Ninth Causes of action due to the lack of specific facts

22   plead [sic] applicable to [Balfour] directly."  (Dkt. No. 78 at 6.)

23   //

24   _____

25   [4] Balfour joined Mr. Richards and Mr. Richardson's motion as to dismiss at Docket No. 76.  Mr.
     Richards and Mr. Richardson subsequently filed an amended motion to dismiss at Docket No. 78.

26   [5] The Court notes Mr. Richards and Mr. Richardson did not join Balfour's motion to dismiss the
     Fifth Cause of Action for failure to provide meal breaks.  (Dkt. No. 80 ("Defendants SCOTT

27   RICHARDS and WAYNE RICHARDSON hereby join the Motion to Dismiss as to Plaintiff's
     Third, Fourth, Sixth, Seventh and Eighth Causes of Action filed by Defendant BALFOUR.").)  In
     addition, Mr. Richards and Mr. Richardson join Balfour's motion to dismiss the Eighth Cause of

28   Action although it is only brought against Balfour.  (Dkt. No. 74 at 27.)

**DISCUSSION**

## I.    NTSSA AND FRSA (CAUSES OF ACTION ONE AND TWO)

### A.    12(b)(1) Motion

Mr. Richards and Mr. Richardson move to dismiss the NTSSA and FRSA claims on the ground Plaintiff failed to exhaust his administrative remedies.  Because they argue this failure "depriv[es] this Court of jurisdiction," (Dkt. No. 79 at 2), the Court understands this argument to form the basis of Mr. Richards and Mr. Richardson's 12(b)(1) motion.  (*Id.* at 6-7 (noting a 12(b)(1) jurisdictional attack may be facial or factual and stating "[o]n a Rule 12(b)(1) motion, the Court can hear evidence outside the pleadings").)

Mr. Richards and Mr. Richardson assume without arguing that the NTSSA and FRSA exhaustion requirements are jurisdictional.  However, whether an exhaustion requirement is a limitation of federal court jurisdiction depends on the statute:

> A statute that requires exhaustion of administrative remedies may limit the district court's subject matter jurisdiction if the exhaustion statute is more than a codified requirement of administrative exhaustion and contains sweeping and direct language that goes beyond a requirement that only exhausted claims be brought. However, failure to exhaust does not deprive a federal court of jurisdiction when the exhaustion statute is merely a codification of the exhaustion requirement.

*McBride Cotton & Cattle Corp. v. Veneman*, 290 F.3d 973, 978 (9th Cir. 2002) (cleaned up). Under this standard, the Ninth Circuit "ha[s] rarely found exhaustion statutes to be a jurisdictional bar."  *Id.*; *see also Maronyan v. Toyota Motor Sales, U.S.A., Inc.,* 658 F.3d 1038, 1040 (9th Cir. 2011) ("Most exhaustion requirements established by Congress do not result in a loss of subject matter jurisdiction.").  In *McBride*, for example, the court concluded the statute's "requirement that 'a person shall exhaust all administrative appeal procedures established by the Secretary or required by law before the person may bring an action in a court of competent jurisdiction . . .'" did not limit the district court's subject matter jurisdiction because such language "was merely a codification of the exhaustion requirement."  *Id.* at 980 (quoting 7 U.S.C. § 6912(e)).

When the Ninth Circuit has concluded an exhaustion requirement was jurisdictional, the statute explicitly limited the district court's jurisdiction.  For example, in *Henderson v. Bank of*

*New England*, 986 F.2d 319, 320 (9th Cir. 1993), the Ninth Circuit considered the exhaustion requirement in 12 U.S.C. § 1821(d), which provides "no court shall have jurisdiction over" the enumerated claims.  The court concluded the failure to exhaust was a jurisdictional bar because the statute—enacted to enable the federal government to respond swiftly to the declining financial condition of banks——"strip[ped] all courts of jurisdiction over claims made outside" the administrative procedures set forth in the statute.  *Id.*  And in *Gallo Cattle Co. v. U.S. Department of Agriculture*, 159 F.3d 1194, 1197 (9th Cir. 1998), the statute provided "the Secretary shall make a ruling on the petition" and vested district courts "with jurisdiction to review such ruling."  *Id.* (quoting 7 U.S.C. § 4509(a)).  Because "[t]he word 'such' . . . identifying those rulings over which the district court has jurisdiction to review, necessarily refers back to the 'ruling on the petition' made by the Secretary," the Ninth Circuit concluded the statute "vest[ed] jurisdiction in the district courts to review only the Secretary's final ruling on a petition filed pursuant to § 4509(a)."  *Id.* at 1197-98.

Here, the NTSSA and FRSA's exhaustion requirements resemble the statute at issue in *McBride*.  The FRSA provides:

> if the Secretary of Labor has not issued a final decision within 210 days after the filing of the complaint and if the delay is not due to the bad faith of the employee, the employee may bring an original action at law or equity for de novo review in the appropriate district court of the United States, which shall have jurisdiction over such an action without regard to the amount in controversy, and which action shall, at the request of either party to such action, be tried by the court with a jury.

49 U.S.C. § 20109(d)(3).  Similarly, the NTSSA provides:

> if the Secretary of Labor has not issued a final decision within 210 days after the filing of the complaint and if the delay is not due to the bad faith of the employee, the employee may bring an original action at law or equity for de novo review in the appropriate district court of the United States, which shall have jurisdiction over such an action without regard to the amount in controversy, and which action shall, at the request of either party to such action, be tried by the court with a jury.

6 U.S.C. § 1142(c)(7).  These statutes do not "contain[] 'sweeping and direct' language that goes beyond a requirement that only exhausted claims be brought."  *See McBride*, 290 F.3d at 978

6

(quoting *Weinberger v. Salfi*, 422 U.S. 749, 757 (1975)).  They do not strip the district court of jurisdiction or limit the district court's jurisdiction.  So, the FRSA and NTSSA's administrative exhaustion requirements are not jurisdictional.  Because there is no jurisdictional attack, the Court disregards the declarations of Mr. Richards and Mr. Richardson at Docket Nos. 76-1 and 76-2 and "instead considers [Mr. Richards and Mr. Richardson's] argument under Federal Rule of Civil Procedure 12(b)(6)."  *See Brown v. Haaland*, 604 F. Supp. 3d 1059, 1086 (D. Nev. 2022).[6]

### B.    12(b)(6) Motion

Mr. Richards and Mr. Richardson contend Plaintiff failed to exhaust his administrative remedies as to them because they were not named as respondents in the administrative complaint Plaintiff filed with the United States Department of Labor.  The caption of the administrative complaint identified Mr. Webb, Balfour, and United as respondents.  (Dkt. No. 74 ¶ 12.)  Plaintiff alleges "[i]n the body of the complaint, Mr. Alghusain identified Wayne Richardson as the site manager for United who stated 'Finish the submittals even if they are wrong or unsafe, we need to close out and get out of this CALTRAIN mess' and was on the phone call with Peter Webb terminating Mr. Alghusain's employment."  (*Id.*)  And Plaintiff alleges "[a]cting as a Principal for United at the time of Mr. Alghusain's hiring and termination, Scott Richards was involved in the acts giving rise to the Department of Labor claims and should have anticipated that he would be named if the Department of Labor continued with its investigation."  (*Id.*)

Mr. Richards and Mr. Richardson state "hav[ing] located no decision directly addressing the requirement to name respondents under FRSA or NTSSA specifically," the Court should look to other similar federal whistleblower statutes.  (Dkt. No. 79 at 9.)  They continue "[m]ost federal courts examining whistleblower claims have repeatedly held that the failure to name a defendant as a respondent in an underlying administrative complaint is grounds for dismissal, and it is insufficient to merely mention an individual in the body of an administrative complaint."  (*Id.*)  The cases Mr. Richards and Mr. Richardson cite in support of this proposition are out-of-circuit

---

[6] With respect to subject matter jurisdiction, the Court notes that Balfour did not join Mr. Richards and Mr. Richardson's motion to dismiss Causes of Action One and Two, and Balfour did not separately move on those causes of action.

district court cases.  Meanwhile, under Ninth Circuit precedent, administrative complaints—"less formal than their judicial counterparts—should be "liberally construed." *Tamosaitis v. URS Inc.*, 781 F.3d 468, 480 (9th Cir. 2015).  In the Title VII context, the Ninth Circuit held an EEOC charge that did not name defendants nevertheless supplied an adequate basis for Title VII claims because "the EEOC and the doctors should have anticipated that [the plaintiff] would name in his suit those who denied him the promotions mentioned in the charge." *Chung v. Pomona Valley Cmty. Hosp.*, 667 F.2d 788, 792 (9th Cir. 1982).  Similarly, in *Sosa v. Hiraoka*, 920 F.2d 1451, 1459 (9th Cir. 1990), the Ninth Circuit set forth three exceptions to the general rule that those not named in an EEOC charge may not be named in a subsequent action: (1) "if the respondent named in the EEOC charge is a principal or agent of the unnamed party, or if they are 'substantially identical parties,'"; (2) "if the EEOC could have inferred that the unnamed party violated Title VII"; and (3) "if the unnamed party had notice of the EEOC conciliation efforts and participated in the EEOC proceedings."  The court added that invoking these exceptions is particularly appropriate when the charge was filed without the assistance of counsel, "since the charging party may not understand the need to name all parties in the charge, or may be unable to appreciate the separate legal identities of, for instance, a corporation and its officers." *Id.*

In light of Ninth Circuit precedent and the allegation Plaintiff "filed a *pro se* complaint," (Dkt. No. 74 at 4), the Court declines to adopt the formalistic approach that individuals not named in the caption of the administrative complaint cannot be sued for purposes of NTSSA and FRSA exhaustion.  Indeed, the regulation governing the filing of FRSA and NTSSA complaints states "[n]o particular form of complaint is required."  29 C.F.R. § 1982.103(b).  "A complaint may be filed orally or in writing" and if oral, the complaint "will be reduced to writing by OSHA." *Id.*  In *Tamosaitis*, 781 F.3d at 479, this same language supported the Ninth Circuit's conclusion that a "technical mistake" should not be dispositive for purposes of exhaustion.  Instead, the Court considers whether Mr. Richards and Mr. Richardson had fair notice they were being charged with retaliation and would likely be named as a defendant in a subsequent judicial proceeding. *See Wadler v. Bio-Rad Lab'ys, Inc.*, 141 F. Supp. 3d 1005, 1021 (N.D. Cal. 2015).

As to Mr. Richardson, the Amended Complaint alleges he was not named as a respondent

in the caption but included in the body of the administrative complaint as a site manager for United who told Plaintiff to submit the documents "even if they are wrong or unsafe" and was "on the phone call with Peter Webb terminating Mr. Alghusain's employment." (Dkt. No. 74 ¶ 12.) These allegations do not support a plausible inference Mr. Richardson had fair notice he would be named as a defendant in this action. The NTSSA and FRSA "provide[] for employee protection from retaliation because the employee has engaged in protected activity." 29 C.F.R. § 1982.100. The administrative complaint named as a respondent Mr. Webb, the individual who allegedly retaliated against Plaintiff by terminating him. It is not plausible to infer Mr. Richardson had fair notice he would be charged with retaliation because the administrative complaint stated Mr. Richardson was on the phone when Mr. Webb terminated Plaintiff. Nor would the fact the administrative complaint stated Mr. Richardson told Plaintiff to submit documents even if they were wrong provide notice to Mr. Richardson that he would be sued for retaliation.

As to Mr. Richards, the Amended Complaint alleges Mr. Richards "should have anticipated that he would be named" because he was "[a]cting as a Principal for United at the time of Mr. Alghusain's hiring and termination." (Dkt. No. 74 ¶ 12.) This conclusory allegation relying on Mr. Richards's title is insufficient to support a plausible inference that Mr. Richards had fair notice that he would be charged with retaliation, particularly when the complaint fails to allege whether and how Mr. Richards was involved in Plaintiff's termination.

So, the Court GRANTS the motion to dismiss Causes of Action One and Two as to Mr. Richards and Mr. Richardson.

## II.    EMPLOYMENT CAUSES OF ACTION (CAUSES OF ACTION THREE – EIGHT)

Balfour moves to dismiss the whistleblower, overtime, meal break, rest period, wage statement, and UCL claims on the ground they "can only be asserted against Plaintiff's 'employer'" and Plaintiff "fails to allege sufficient facts to present a claim that [Balfour] was either a joint employer with Cross-defendant [United] or that it is vicariously liable for the acts of [United]." (Dkt. No. 78 at 6, 9.) Mr. Richards and Mr. Richardson join Balfour's motion to dismiss these employment claims except for Cause of Action Five (failure to provide rest periods). (Dkt. No. 80.)

United States District Court
Northern District of California

9

United States District Court
Northern District of California

Plaintiff does not dispute that the existence of an employer-employee relationship is a prerequisite to Causes of Action Three through Seven. *See* Cal. Lab. Code § 1102.5(c) ("An *employer* . . . shall not retaliate against an *employee* for refusing to participate in an activity that would result in a violation of state or federal statute . . . .") (emphases added); Cal. Lab. Code § 512(a) ("An employer shall not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes . . . ."); Cal. Lab. Code § 558(a) (subjecting to a civil penalty "[a]ny employer . . . who violates . . . a section of this chapter . . . ."); Cal. Lab. Code § 226(a) ("An employer . . . shall furnish to their employee . . . an accurate itemized statement . . . ."). And because the Eighth Cause of Action alleges a violation of California Business and Professions Code section 17200 on the ground Balfour gained unfair benefits by failing to provide overtime compensation, meal breaks, rest periods, and wage statements, (Dkt. No. 74 ¶ 160), it also requires an employment relationship.

The Amended Complaint alleges Plaintiff "was an employee (or in the alternative a contractor) for United and Balfour in a joint employer relationship." (Dkt. No. 74 ¶ 18.) So, in evaluating the motion to dismiss the employment claims, the Court considers whether the Amended Complaint plausibly alleges Plaintiff was an employee of Balfour and United acting as joint employers.

### A.    Joint Employment

"A joint employer is a person who, by exercising significant control over the employees of another, may come to *share the employer's legal obligations*." *Gonzalez v. Nowhere Beverly Hills LLC*, 107 Cal. App. 5th 111, 122–23 (2024) (citing *Martinez v. Combs*, 49 Cal. 4th 35, 50 (2010)). *Martinez*—"the controlling case on joint employment in California"—defines employment as a standard "consisting of three alternatives: (1) to exercise control over wages, hours, or working conditions, directly or indirectly, or through an agent or any other person; (2) to 'suffer or permit to work'; or (3) to engage. *Medina v. Equilon Enters., LLC*, 68 Cal. App. 5th 868, 874 (2021) (citing *Martinez*, 49 Cal. 4th. at 64). Courts "must analyze myriad facts surrounding the employment relationship in question" to determine whether an organization is a joint employer. *St. Myers v. Dignity Health*, 44 Cal. App. 5th 301, 311 (2019). The *St. Meyers* court offered the

following factors to consider in making this assessment, the most important being "the defendant's

right to control the means and manner of the workers' performance":

> payment of salary or other employment benefits and Social Security taxes,
> the ownership of the equipment necessary to performance of the job,
> the location where the work is performed,
> the obligation of the defendant to train the employee,
> the authority of the defendant to hire, transfer, promote, discipline or discharge the employee,
> the authority to establish work schedules and assignments,
> the defendant's discretion to determine the amount of compensation earned by the employee,
> the skill required of the work performed and the extent to which it is done under the direction of a supervisor,
> whether the work is part of the defendant's regular business operations,
> the skill required in the particular occupation,
> the duration of the relationship of the parties, and
> the duration of the plaintiff's employment.

*Id.* at 311-12. "[A] person can be a joint employer without exercising direct control over the

employee." *Medina*, 68 Cal. App. 5th at 879. "If the putative joint employer instead exercises

enough control over the intermediary entity to indirectly dictate the wages, hours, or working

conditions of the employee, that is a sufficient showing of joint employment." *Id.*

      Drawing all inferences in Plaintiff's favor, the Amended Complaint alleges sufficient facts

to support a plausible inference Plaintiff was an employee of Balfour, acting as a joint employer

with United.   Plaintiff "was stationed at Balfour's offices" where he was required to work 50

hours each week "under direct supervision of Scott Richards, Wayne Richardson and Michael

Vaz, who in turn reported to Peter Webb."[7]  (Dkt. No. 74 ¶ 41.)  Plaintiff "was provided and used

computers and email addresses for both Balfour and United."  (Dkt. No. 74 ¶ 19.)  After Plaintiff

sent an email "to the management team including Michael Vaz and Matt Brassington from Balfour

and Wayne Richardson from United management" regarding his technical assessment, Mr.

Richardson told Plaintiff "'I was just at the top floor and I spoke with the big boys, they do not

want to hear your technical assessment, just sign the documents and stop sending e-mails to the

---

[7] While the Amended Complaint does not allege as much, for purposes of this motion, the Court understands Mr. Webb to be a Balfour employee.  The Third Amended Complaint (if any) should specifically allege Mr. Webb's employment.

top floor', in reference to Balfour's top management."  (Dkt. No. 74 ¶ 58 (italics removed).)  In addition, the Amended Complaint describes Plaintiff reporting to and receiving instructions from Mr. Vaz, "a senior manager of [Balfour]."  (*Id.* ¶ 77 (Mr. Vaz telling Plaintiff to submit documents to CALTRAIN by November 15, 2023); ¶ 66 (Plaintiff assuring Mr. Vaz "that he can review, correct, develop, validate, and produce adequate and safe documents").)  And finally, the Amended Complaint alleges Mr. Webb of Balfour told Plaintiff *"Do not bother coming to the office tomorrow, F\*\*\* off, you are fired"*.  (*Id.* ¶ 93.)

In sum, the Amended Complaint alleges Plaintiff performed work at Balfour's office, used Balfour's equipment, and reported to Balfour employees.  Further, it alleges a Balfour employee terminated Plaintiff.  *See Medina*, 68 Cal. App. 5th at 879 (emphasizing the plaintiff "was even threatened with termination by a [defendant] employee" in concluding the plaintiff made a sufficient showing the defendant was a joint employer).  Taken together, these allegations support a plausible inference Balfour "control[ed] the means and manner of [Plaintiff's] performance."  *See St. Myers*, 44 Cal. App. 5th at 311.

In disputing this conclusion, Balfour argues Plaintiff failed to meet his burden of proving he was an employee rather than an independent contractor.  Balfour relies on Plaintiff's employment contract "affirm[ing] that he was never to be considered an employee of [United] and would at all times operate as an independent contractor."  (*Id.* (citing Dkt. No. 1 at 19).)  But when determining whether a worker is an employee or an independent contractor, "[t]he parties' label is not dispositive and will be ignored if their actual conduct establishes a different relationship."  *Estrada v. FedEx Ground Package Sys., Inc.*, 154 Cal. App. 4th 1, 10–11 (2007).  It would be improper to hold as a matter of law that Plaintiff was an independent contractor because his contract said so in light of the allegations plausibly supporting an inference Balfour and United exercised sufficient control over Plaintiff's hours and working conditions to render him an employee.

Balfour also relies on Mr. Richards's declaration to establish there was no joint employer relationship.  (Dkt. No. 78 at 13 ("[T]he Richards Declaratoin [sic] confirms that [United] alone hired Plaintiff on June 27, 2023, and later fired him in early August 2023."); *id.* at 12 ("Given the

declaration from [United] employee Richards, it appears that Plaintiff cannot amend his complaint to allege joint employer facts because he admits [United] was Plaintiff's hirer.").)  But on a motion to dismiss, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  The Court cannot rely on statements in a declaration to dispute the plaintiff's factual allegations.

Finally, Balfour argues even if Plaintiff has sufficiently pled joint employment by both United and Balfour, the complaint fails to plead employment claims against Balfour "since all such claims are alleged as vicarious liability."  (Dkt. No. 78 at 11.)  Balfour relies on a California Court of Appeal case holding "whether an employer is liable for a co-employer's violations depends on the scope of the employer's own duty under the relevant statutes, not 'principles of agency or joint and several liability.'"  *Serrano v. Aerotek, Inc.*, 21 Cal. App. 5th 773, 784 (2018) (citing *Noe v. Superior Ct.*, 237 Cal. App. 4th 316, 331 (2015)).  In *Serrano*, the plaintiff sued "her former employer, Aerotek, Inc., which placed her as a temporary employee with its client, Bay Bread, LLC."  *Id.* at 775-76.  The plaintiff filed suit against Aerotek and Bay Bread for failure to provide meal periods.  *Id.* at 782.  The Court of Appeal assumed, without deciding, the companies were joint employers but concluded Aerotek was not vicariously liable for Bay Bread's alleged meal period violations.  *Id.* at 782-83.

*Serrano* is distinguishable.  First, it was decided on summary judgment.  Second, it involved an alleged joint employer relationship between a staffing agency and its client.  The client, Bay Bread, "set the schedules that Aerotek temporary employees worked and managed their shifts, including the taking of meal breaks."  *Id.* at 777.  The plaintiff admitted she was "unaware of any actions Aerotek affirmatively took to prevent her from taking meal breaks within the first five hours of work but believed that Aerotek failed to ensure that Bay Bread implemented appropriate meal break policies."  *Id.* at 778 (cleaned up).  Here, in contrast, Plaintiff is not alleging Balfour is vicariously liable for United's violations of the Labor Code but instead that Balfour, as a joint employer, "discharged him in retaliation for his disclosure of improper safety practices and documentation," (Dkt. No. 74 ¶ 129); "intentionally misclassified [him] as an

1   independent contractor" and thus failed to pay overtime compensation due, (*id.* ¶ 137); failed to

2   provide meal periods, (*id.* ¶ 142); failed to provide rest periods, (*id.* ¶ 146); and failed to provide

3   accurate records of the hours work, (*id.* ¶ 150).  Contrary to Balfour's assertion, Plaintiff has thus

4   "specifically identif[ied] the particular conduct by [Balfour] which violated the Labor Code."

5   (Dkt. No. 78 at 12.)

6          Having plausibly alleged Balfour and United were joint employers, Plaintiff plausibly

7   alleges Balfour had a duty to refrain from retaliating against Plaintiff and to provide him overtime

8   compensation, meal breaks, rest periods, and wage statements.  So, the Court DENIES Balfour's

9   motion to dismiss Causes of Action Three through Eight.  And the Court DENIES Mr. Richards

10  and Mr. Richardson's motion to dismiss Causes of Action Three, Four, Six, Seven, and Eight.

11  While Mr. Richards and Mr. Richardson joined Balfour's motion to dismiss these causes of action,

12  that motion was focused on Balfour's employment relationship (or lack thereof) with Plaintiff.  In

13  fact, Balfour's motion stated United was Plaintiff's "'true' hirer" and while Plaintiff settled his

14  claims against United, that "settlement did not encompass its employees Richards and

15  Richardson."  (Dkt. No. 78 at 10.)

16  ## III.    DEFAMATION (CAUSE OF ACTION NINE)

17         Cause of Action Nine against Balfour and Individual Defendants alleges defamation,

18  stating:

19         Defendants, Webb, Richardson and Richards, and each of them, made
           false statements both verbally and in writing about Plaintiff to
20         CALTRAIN and to the union organization executives and members
           of the International Brotherhood of Electrical Workers (IBEW), and
21         these defamatory statements were made in writing and verbally to
           other subcontractors like Modern Rail Systems, Herzog, STADLER,
22         Transit America Services Inc (TASI), Mass Electric, and to other third
           parties on the CALTRAIN project.
23         ….
           These false statements include []*1. Ameer has stolen the gate code, 2.*
24         *Ameer is trespassing on the property, 3. Ameer has been fired from*
           *CALTRAIN, 4. Ameer has entered live train depot illegally, 5. Ameer*
25         *is incompetent, 6. Ameer is struggling with technical documents, and*
           *other harmful statements.*
26
27  (Dkt. No. 74 ¶¶ 164, 166.)   Mr. Richards and Mr. Richardson move to dismiss on the ground the

    complaint "does not allege with sufficient detail what false statements, if any, Richards or
28

United States District Court
Northern District of California

1    Richardson made." (Dkt. No. 79 at 11.) Similarly, Balfour moves to dismiss on the ground the

2    allegations "fail[] to explain what Mr. Webb said or wrote, when he said or wrote, or to whom he

3    talked or wrote." (Dkt. No. 78 at 14.)

4        In California, "[t]he elements of a defamation claim are (1) a publication that is (2) false,

5    (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special

6    damage." *Jackson v. Mayweather*, 10 Cal. App. 5th 1240, 1259 (2017) (cleaned up). To plead a

7    defamation claim, "[t]he general rule is that the words constituting an alleged libel must be

8    specifically identified, if not pleaded verbatim, in the complaint." *Kahn v. Bower*, 232 Cal. App.

9    3d 1599, 1612 n.5 (1991). While Plaintiff need not "state the exact words" of the alleged

10   defamation, he is required to "alleg[e] the substance of the defamatory statement." *Okun v.*

11   *Superior Ct.*, 29 Cal. 3d 442, 458 (1981).

12       Here, Plaintiff has not alleged defamation with sufficient specificity. The Amended

13   Complaint alleges Mr. Richards, Mr. Richardson, and Mr. Webb each made the same six allegedly

14   defamatory statements. That is not plausible—at least without more. In addition to failing to

15   identify which defendant made which statement, the Amended Complaint fails to specify which

16   statements were made verbally and which were in writing. Likewise, the Amended Complaint

17   alleges the statements were made to CALTRAIN, union executives, and "other subcontractors like

18   Modern Rail Systems, Herzog, STADLER, Transit America Services Inc (TASI), Mass Electric,

19   and to other third parties on the CALTRAIN project." (Dkt. No. 74 ¶ 166.) These allegations fail

20   to specify which statements were made to which individuals/organizations, and in what form.

21       Plaintiff's opposition recites the defamation allegations and contends those allegations are

22   sufficiently specific, but he cites no case to support his conclusion. So, the Court GRANTS

23   Balfour's and Mr. Richards and Mr. Richardson's motions to dismiss Cause of Action Nine.

24   **IV.    INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS (CAUSE OF
         ACTION TEN)**

25       Plaintiff's tenth cause of action against all defendants "is based is based upon the conduct

26   of Defendants causing Plaintiff to suffer lost contracts in the future." (Dkt. No. 74 ¶ 171.) The

27   Amended Complaint alleges "[a]fter the Defendants' statements set forth in paragraph 166 [the

28

United States District Court
Northern District of California

1    allegedly defamatory statements], Mr. Alghusain did not get" a three-year contract from Herzog

2    "despite initial assurances." (*Id.* ¶¶ 172-73.)

3          Mr. Richards, Mr. Richardson, U.S. Rail Systems move to dismiss on the ground the

4    complaint "fails to allege almost every essential element" of the claim. (Dkt. No. 79 at 12.)

5    Balfour joins their motion to dismiss this claim. (Dkt. No. 77.) A plaintiff alleging tortious

6    interference with prospective economic advantage must show:

7                (1) the existence of a prospective business relationship containing the
            probability of future economic rewards for plaintiff;

8                (2) knowledge by defendant of the existence of the relationship;
            (3) intentional acts by defendant designed to disrupt the relationship;

9                (4) actual causation; and,
            (5) damages to plaintiff proximately caused by defendant's conduct.

10   *Prostar Wireless Grp., LLC v. Domino's Pizza, Inc.*, 360 F. Supp. 3d 994, 1015 (N.D. Cal. 2018),

11   *aff'd*, 815 F. App'x 117 (9th Cir. 2020) (quoting *PMC, Inc. v. Saban Ent., Inc.*, 45 Cal. App. 4th

12   579, 595 (1996)). "The elements are the same for negligent interference although the plaintiff

13   need only show that the defendant acted negligently." *Id.* (citing *Venhaus v. Shultz*, 155 Cal. App.

14   4th 1072, 1078 (2007)).

15         In this case, Plaintiff's claim fails at element two because he does not allege any defendant

16   knew of his relationship with Herzog. Plaintiff apparently concedes his allegations are insufficient

17   because he "requests an opportunity for discovery of the third party communications or in the

18   alternative to be dismissed without prejudice." (Dkt. No. 81 at 6.)

19         The Court GRANTS the motion to dismiss Cause of Action Ten. Plaintiff's request for

20   discovery is DENIED. *See Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1177 (9th Cir. 2021)

21   ("[N]inth Circuit] case law does not permit plaintiffs to rely on anticipated discovery to satisfy

22   Rules 8 and 12(b)(6); rather, pleadings must assert well-pleaded factual allegations to advance to

23   discovery."); *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) ("Rule 8 . . . does not unlock the

24   doors of discovery for a plaintiff armed with nothing more than conclusions."). But, as discussed

25   below, the Court grants leave to amend this claim.

26   **V.    MISAPPROPRIATION OF TRADE SECRETS (CAUSES OF ACTION ELEVEN
       AND TWELVE)**

27

28         Cause of Action Eleven alleges misappropriation of trade secrets in violation of the Defend

United States District Court
Northern District of California

Trade Secrets Act ("DTSA"), and Cause of Action Twelve alleges misappropriation of trade secrets in violation of California's Uniform Trade Secrets Act ("CUTSA").  The claims are brought against "Individual Defendants, Richards and Richardson, and U.S. Rail Systems, Inc." (Dkt. No. 74 at 31.)  The Amended Complaint alleges Plaintiff "developed important technical documents bearing his brand names, trademarks, and service marks . . . for future use/contracts" and such "documents and intellectual property are the sole ownership of Mr. Alghusain."  (Dkt. No. 74 ¶ 17.)  After Plaintiff was terminated, Mr. Richards and Mr. Richardson "used the same documents and manuals and presentation developed by Ameer Alghusain to create a new business called US RAIL Systems, without any regards to Mr. Alghusain brand name and trademark US Rail™ that is solely owned by Ameer Alghusain in the electric trains and electrification markets since 2002." (*Id.* ¶ 102.)

Courts analyze DTSA and CUTSA "claims together because the elements are substantially similar." *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657 (9th Cir. 2020).  "To state a claim for trade secret misappropriation under the DTSA and the CUTSA, a plaintiff must allege that: (1) the plaintiff owned a trade secret; (2) the defendant misappropriated the trade secret; and (3) the defendant's actions damaged the plaintiff." *Beluca Ventures LLC v. Einride Aktiebolag*, 660 F. Supp. 3d 898, 907 (N.D. Cal. 2023) (citation omitted).

Mr. Richards, Mr. Richardson, and U.S. Rail Systems move to dismiss on the grounds the complaint "fails to (1) allege unconsented disclosure of a trade secret, (2) describe such secrets with sufficient particularity, (3) explain what efforts Plaintiff made to keep the alleged secrets and (4) show that the purportedly misappropriated information has independent economic value." (Dkt. No. 79 at 13.)  Because the Court agrees Plaintiff fails to allege trade secrets with sufficient specificity, the Court need not address the other arguments.

To prove ownership of a trade secret, a plaintiff "must identify the trade secrets and carry the burden of showing they exist." *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 658 (9th Cir. 2020) (citation omitted).  That is, the plaintiff must "describe the subject matter of the trade secret with *sufficient particularity* to separate it from matters of general knowledge in the trade or of special knowledge of those persons skilled in the trade." *Id.* (cleaned up).  "Long lists

17

1    of general areas of information containing unidentified trade secrets are not substitutes for

2    particularized and concrete trade secrets." *Id.* (citation omitted).

3          Here, Plaintiff has not alleged trade secrets with sufficient specificity "to permit the

4    defendant to ascertain at least the boundaries within which the secret lies." *See Vendavo, Inc. v.*

5    *Price f(x) AG*, No. 17-CV-06930-RS, 2018 WL 1456697, at *4 (N.D. Cal. Mar. 23, 2018) (cleaned

6    up). The Amended Complaint alleges the following 14 categories of "documents and intellectual

7    property":

8            • List of current, former and potential customers.
             • Business and professional bidding templates.

9            • Operations and Maintenance of Electric Trains, and Operations and
             Maintenance of Equipment related to Electric Trains.

10           • Welding Manual for tracks to tracks.
             • Welding manual for grounding and bonding for railways

11           applications.
             • Apprenticeship program for rail power systems, in cooperation with

12           Mission College.
             • Maintenance of overhead power systems,

13           • Power On/Power Off of rail power systems.
             • Operations and Maintenance of transformers and supporting power

14           systems,
             • Inspection of power substations, electromagnetic power and induced

15           electricity manual.
             • Surge and protection of railways power infrastructure.

16           • Short circuit loops tools and equipment.
             • Training manuals for Electric trains, Operations and Maintenance,

17           Grounding, safety and tools related to electrified trains system in the
             US.

18   (Dkt. No. 74 ¶ 101.) The broad categories—for example "Maintenance of overhead power

19   systems" and "Short circuit loops tools and equipment"—are insufficient to put Mr. Richards, Mr.

20   Richardson, and U.S. Rail Systems on notice as to the documents forming the basis of Plaintiff's

21   claims. *See InteliClear*, 978 F.3d at 658 (cleaned up) ("It is inadequate for plaintiffs to cite and

22   incorporate by reference hundreds of documents that purportedly reference or reflect the trade

23   secret information.")). Other courts have found similar allegations insufficient to meet the

24   plaintiff's burden of identification. *See, e.g.*, *Vendavo, Inc. v. Price f(x) AG*, No. 17-CV-06930-

25   RS, 2018 WL 1456697, at *3 (N.D. Cal. Mar. 23, 2018) (concluding "customer lists and customer

26   related information" was not sufficiently specific); *Space Data Corp. v. X*, No. 16-CV-03260-

27   BLF, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017) (concluding "data on the propagation of

28

radio signals from stratospheric balloon-based transceivers" was not sufficiently specific). Moreover, Plaintiff's lack of specificity in identifying the trade secrets is exacerbated by a lack of specificity regarding when and by what means Mr. Richards, Mr. Richardson, and U.S. Rail Systems acquired and/or disclosed these documents.

Plaintiff apparently concedes his allegations are insufficient because he "requests an opportunity for discovery or in the alternative to be dismissed without prejudice to bring such claims within the three-year statute of limitations." (Dkt. No. 81 at 6.) As with the tortious interference claim, Plaintiff's request for additional discovery is DENIED. The Court GRANTS Mr. Richards, Mr. Richardson, and U.S. Rail Systems' motion to dismiss Causes of Action Eleven and Twelve, but as discussed below, the Court grants leave to amend these claims.

## VI.    PUNITIVE DAMAGES

Mr. Richards and Mr. Richardson move to dismiss all requests for punitive damages against them on the ground "Plaintiff's conclusory allegations of malice, oppression, and fraud fail to meet federal pleading standards and cannot support punitive damages as a matter of law." (Dkt. No. 79 at 15.)

The Amended Complaint requests punitive damages for the FRSA, NTSSA, whistleblower, and defamation causes of action. (Dkt. No. 74 ¶¶ 117, 125, 134, 169.) This order dismisses the FRSA, NTSSA, and defamation causes of action; so, the only remaining claim with a punitive damages request against Mr. Richards and Mr. Richardson is Cause of Action Three alleging a violation of California's whistleblower protection law.

For that claim, punitive damages are governed by California Civil Code § 3294, which provides a plaintiff may seek punitive damages "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294(a). "'Malice' means conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." *Id.* § 3294(c)(1). "To support punitive damages, the complaint . . . must allege ultimate facts of the defendant's oppression, fraud, or malice." *Cyrus v. Haveson*, 65 Cal. App. 3d 306, 316–17 (1976).

United States District Court
Northern District of California

As to Mr. Richards, the Amended Complaint plausibly pleads malice.  The Amended Complaint alleges Plaintiff expressed to Mr. Richards his concern "about the technical documents correctness and accuracy and they are NOT safe and [Balfour] will kill someone," to which Mr. Richards responded:

> "I assure you that you will be fine, no one at CALTRAIN even review these documents anyway" and continued "We all know this CALTRAIN project is F***ed up, so not our problem, just listen to Wayne and sign on these documents, we have a lot of work to do until CALTRAIN start reviewing these documents".

(Dkt. No. 74 ¶ 65 (italics removed).)  The allegation Mr. Richards told Plaintiff to submit documents despite safety concerns supports an inference Mr. Richards engaged in "despicable conduct . . . with a willful and conscious disregard of the . . . safety of others."  *Id.* § 3294(c)(1).

Likewise, the Amended Complaint plausibly pleads malice as to Mr. Richardson.  It alleges Mr. Richardson told Plaintiff to submit documents despite Plaintiff raising safety concerns about those documents.  (Dkt. No. 74 ¶ 58 ("just sign the documents and stop sending e-mails to the top floor"); *id.* ¶ 66 ("I do not care if the documents are wrong or unsafe, just sign the documents and send over to CALTRAIN, we need to close this project and leave asap")).)  These allegations support a plausible inference that Mr. Richardson—in willfully and consciously disregarding the safety of others—is guilty of malice under section 3294(a).

So, the Court DENIES Mr. Richards and Mr. Richardson's motion to dismiss the punitive damages request in Cause of Action Three.

## VII.    MORE DEFINITE STATEMENT AND LEAVE TO AMEND

"Alternative or in addition to the relief sought above, Defendant [Balfour] moves for a more definite statement of relief pursuant to FRCP 12(e) by Plaintiff" regarding the employment and defamation claims (Causes of Action Four, Five, Six, Seven, Eight, and Nine).  (Dkt. No. 78 at 2, 15.)   Under Rule 12(e), "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response."  "Rule 12(e) motions are disfavored and are proper only if the complaint is so indefinite that the defendant cannot ascertain the nature of the claim being asserted."  *Media.net Advert. FZ-LLC v. NetSeer, Inc.*, 156 F. Supp. 3d 1052, 1075 (N.D. Cal.

2016) (cleaned up). Such motions are "ordinarily restricted to situations where a pleading suffers from unintelligibility rather than want of detail." *Id.* (cleaned up).

Here, Balfour's motion to dismiss demonstrates it is aware of the nature of the claims being asserted. Accordingly, the Amended Complaint was not "so vague or ambiguous" so as to prevent Balfour from responding. *See* Fed. R. Civ. P. 12(e).

Plaintiff requests leave to file a further amended complaint. The Court grants Plaintiff leave to amend the claims dismissed by this Order, provided amendment can be made consistent with Federal Rules of Civil Procedure 11. *See Bacon v. Woodward*, 104 F.4th 744, 753 (9th Cir. 2024) (cleaned up) ("Even if a complaint is deficient, . . . a district court should grant leave to amend . . . unless it determines that the pleading could not be cured by the allegation of other facts."). The policy that "[l]eave to amend shall be freely given when justice so requires . . . is to be applied with extreme liberality." *Id.* (cleaned up). The Court's granting of leave to amend "moots Defendant's motion for a more definite statement." *See Media.net*, 156 F. Supp. 3d at 1075. No new claims or defendants may be added without further leave of court.

## CONCLUSION

As to Mr. Richards and Mr. Richardson, the Court DISMISSES Causes of Action One (FRSA), Two (NTSSA), Nine (defamation), Ten (interference with prospective economic relations), Eleven (DTSA), and Twelve (CUTSA). The Court also dismisses Causes of Action Ten, Eleven, and Twelve as to U.S. Rail Systems. As to Balfour, the Court DISMISSES Causes of Action Nine (defamation) and Ten (interference with prospective economic relations).

The Court DENIES Balfour's motion—joined by Mr. Richards and Mr. Richardson, except for Cause of Action Five—to dismiss Causes of Action Three (retaliation); Four (failure to pay overtime compensation); Five (failure to provide meal breaks); Six (failure to provide rest periods); Seven (failure to provide wage statements), and Eight (UCL).

The Court DENIES Mr. Richards and Mr. Richardson's request to strike Plaintiff's punitive damages request for Cause of Action Three. And the Court DENIES as moot Mr. Richards and Mr. Richardson's request to strike punitive damages for the claims the Court dismissed. Finally, the Court DENIES Balfour's motion for a more definite statement under

United States District Court
Northern District of California

Federal Rule of Civil Procedure 12(e).

Any amended complaint must be filed by June 26, 2025.  If Plaintiff elects not to amend, the case will proceed on the claims not dismissed by this Order.  The July 9, 2025 case management conference remains on calendar with an updated joint case management conference statement due July 2, 2025.

This Order disposes of Docket Nos. 78 and 79.

**IT IS SO ORDERED.**

Dated: June 10, 2025

JACQUELINE SCOTT CORLEY
United States District Judge